**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jesus GALVEZ–URIARTE,
Defendant-Appellant,**

**Bert F. Sparacino, d.b.a., Bert's Bail
Bonds, Real Party in
Interest-Appellant.**

No. 81–5341.

United States Court of Appeals,
Ninth Circuit.

Submitted March 29, 1983.*

Decided July 7, 1983.

As Amended Sept. 15, 1983.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 3(a).

Peter K. Nunez, U.S. Atty., John R. Neece, Susan C. Cassell, Asst. U.S. Attys., San Diego, Cal., for plaintiff-appellee.

Matthew Nelson Lees, San Diego, Cal., for Jesus Galvez-Uriarte and Bert Sparacino.

Before TANG, FERGUSON, and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Sparacino, a bail bondsman, appeals from an order denying his motion to set aside a bail bond forfeiture. We reverse, in part, because the United States increased the risk of the bail bondsman without notice and consent.

Jesus Galvez-Uriarte was charged with violations of federal narcotics laws. He was released pending trial when Sparacino, as agent for Allied Fidelity Insurance Company, filed a $75,000 corporate surety bond. The bond provided that Galvez could not leave California without permission of the court.

Galvez is a citizen of Mexico. When he was released from custody his passport documents were not returned. After the hearing setting a trial date, Galvez' attorney asked the Assistant United States Attorney to obtain documents allowing Galvez to remain in the United States until his trial. The Government attorney responded that she could not do so, but did provide a parole letter that would allow Galvez to re-enter the United States for trial. The letter required Galvez' attorney to acknowledge that he had advised Galvez to return to Mexico until the trial.

When Galvez failed to appear for a later hearing, the district court granted the Government's motion for forfeiture of the bond. Sparacino moved to set aside the forfeiture, arguing that the Government could not enforce the bond because by authorizing Galvez to return to Mexico in direct contravention of the terms of the bond, the Government had increased the risk of the surety. The district court denied Sparacino's motion, reasoning that only Galvez, not the Government, had any contractual duty to the surety to uphold the terms of the bond.

The district court's reasoning is contrary to binding precedent. The Supreme Court has stated that a bail bond is an obligation that runs in favor of the Government, and that the Government may not enforce the obligation if its actions materially increase the risk of the surety without the surety's knowledge and consent. Authorizing a defendant to leave the country where the terms of the bail bond prohibit such travel materially increases the surety's risk, be-

cause the surety has no power to arrest the defendant outside the United States. Where the defendant leaves the country under such authorization, the bond will not be forfeited if the defendant later fails to appear when required.

> By the recognizance the principal is, in the theory of the law, committed to the custody of the sureties as to jailers of his own choosing, not that he is, in point of fact, in this country at least, subjected or can be subjected by them to constant imprisonment; but he is so far placed in their power that they may at any time arrest him upon the recognizance and surrender him to the court, and, to the extent necessary to accomplish this, may restrain him of his liberty. This power of arrest can only be exercised within the territory of the United States; and there is an implied covenant on the part of the principal with his sureties, when he is admitted to bail, that he will not depart out of this territory without their assent. There is also an implied covenant on the part of the government, when the recognizance of bail is accepted, that it will not in any way interfere with this covenant between them, or impair its obligation, or take any proceedings with the principal which will increase the risks of the sureties or affect their remedy against him.

*Reese v. United States,* 76 U.S. (9 Wall.) 13, 21–22, 19 L.Ed. 541 (1869). *See Continental Casualty Co. v. United States,* 337 F.2d 602, 603 (1st Cir.1964); 24 A.L.R.Fed. 580–611.

There is no important distinction between this case and *Reese.* It is irrelevant that out-of-court action by the United States Attorney, rather than a court order, allegedly caused Galvez to leave the country. Any Government action that substantially encourages the defendant to leave the country in violation of the terms of the bond is a material breach of the Government's implied covenant not to interfere with the covenant between the defendant and the surety.

Because the evidence conclusively indicates that the Government substantially encouraged the defendant to leave the country,[1] the denial of the motion to set aside forfeiture with respect to the bondsman Sparacino is reversed. The district court order forfeiting the bond as to the defendant is in no way intended to be affected by this opinion; in that respect the order forfeiting the bond as to the defendant is affirmed.

REVERSED in part and AFFIRMED in part.

---

[1] Galvez-Uriarte's attorney, Goldberg, stated in his affidavit that he first sought a document authorizing the defendant to remain in the United States pending trial and was advised by Ms. Bermingham, the assistant United States Attorney, that no such document could be furnished. Mr. Goldberg then telephoned either Assistant United States Attorney Bermingham or Hayes requesting that the defendant be allowed to return to Mexico and that he be given a parole letter to return to the United States for the August 24 hearing. Such a parole letter was furnished by the United States Attorney's office. The parole letter contained an acknowledgement to be signed by counsel, stating:

> I hereby acknowledge my responsibility in advising the parolee to return to Mexico and to verify his departure to the Immigration and Naturalization Service by turning in his original parole Form I-94 on his return to Mexico. In the event the parolee will not be able to return to Mexico as scheduled, I will so advise the Immigration and Naturalization Service.

Although Ms. Bermingham in her affidavit states that she was not asked for approval of defendant's departure from the United States and furnished the parole letter under the belief that the defendant was already in Mexico, there is no dispute that the office advised that it had no authority to provide a letter authorizing the defendant to remain in the United States and then furnished the parole letter with acknowledgement for counsel to sign advising the defendant to return to Mexico. Moreover, there is no responsive affidavit from Assistant United States Attorney Hayes. Under the status of the record, consisting of documentary materials only, no other conclusion can be reached but that the defendant's departure was encouraged, whether wittingly or otherwise, by the Government.