**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George Adam LePICARD, Defendant,**

**Goldberg and Telles Bail Bonds and Cotton Belt Insurance Company, Real Parties in Interest-Appellants.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George Adam LePICARD, Defendant,**

**Linda LePicard, Real Party in Interest-Appellant.**

**Nos. 83–1053, 83–1063.**

United States Court of Appeals, Ninth Circuit.

Argued * and Submitted Dec. 12, 1983.

Decided Jan. 9, 1984.

* Argued only as to 83–1053.

Roger W. Dokken, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Jan Lawrence Handzlik, Stilz, Boyd, Levine & Handzlik, Los Angeles, Cal., for real parties in interest-appellants.

Before WRIGHT, CHOY and POOLE, Circuit Judges.

POOLE, Circuit Judge:

Corporate sureties and an indemnitor on bail bonds appeal an order forfeiting bail. Because we hold that the sureties were not bound by the condition whose violation led to the forfeiture order, we reverse.

## I. FACTS

On January 21, 1981, George LePicard was found in California, arrested and taken into custody pursuant to an Arizona bench warrant and indictment charging conspiracy to manufacture and distribute methamphetamine. He was brought before a federal magistrate in Los Angeles and released on bail of $75,000, the amount fixed in the warrant. The bail was posted by the corporate surety appellants. Linda LePicard, his former wife, also an appellant here, was indemnitor on the bail bonds. LePicard was ordered to appear in Phoenix on a day certain.

The bonds were on standard, printed forms, entitled "Bond for the Preliminary Appearance and Court Appearance of Defendant." The bond forms stated that the defendant "shall appear * * * in accordance with all orders and directions of the Court relating to appearance of said defendant before said Court, or in any other United States District Court to which the case may be removed or transferred."

As required, LePicard appeared before a magistrate in Phoenix on February 18, 1981, and was arraigned on the Arizona indictment. No representative of the sureties attended this hearing. At that time, the magistrate entered an "Order Specifying Methods and Conditions of Release," requiring for the first time, as a condition of release, that LePicard "shall not break any local, state or federal laws." The order recited that a $75,000 bond was to be posted, but noted that a "corporate surety bond [was] previously posted in California." No new bond was required to be posted.

In October, 1982, twenty months later, with the Arizona charge still pending, LePicard was arrested again in California on unrelated drug charges. On January 3, 1983, he pleaded guilty to these new charges and was sentenced to five years imprisonment. The Government moved to forfeit bail in Arizona on the ground that LePicard had violated the conditions of his

release in that he had committed another violation contrary to the Arizona-imposed condition of his bail. On February 25, 1983, the district court entered judgment forfeiting bail. Subsequently, the court denied Linda LePicard's application for remission of forfeiture.

We conclude that the sureties could not be held bound by the additional condition to which they were not parties and to which they had not consented. Accordingly, we reverse the order which forfeited bail for breach of a condition which constituted a new and materially different undertaking not agreed to by the sureties.

## II. DISCUSSION

The bond as originally executed did not include the "break no laws" condition. The Government nevertheless contends that the sureties are bound because imposition of that condition did not materially increase their risk on the bond. We disagree.

In *United States v. Galvez-Uriarte*, 709 F.2d 1323 (9th Cir.1983), this court held that bail sureties were not liable on their bond, despite defendant's failure to appear, because the U.S. Attorney had advised the defendant to return to Mexico pending his trial on narcotics charges. We said that "a bail bond is an obligation that runs in favor of the Government, and * * * the Government may not enforce the obligation if its actions materially increase the risk of the surety without the surety's knowledge and consent." 709 F.2d at 1324. It does not matter, we stated, whether the increased risk is caused by the attorney for the Government or by a court order. *Id.* at 1325.

Forfeiture of bail is even less appropriate here than in *Galvez-Uriarte*. There, the surety admitted its obligation to pay when the defendant failed to appear, but argued that its performance was excused by the Government's conduct. It was recognized in *Galvez-Uriarte* that a wide variety of governmental actions may increase or de-

crease the chance that the defendant will flee, and that such actions extinguish the surety's primary obligation to assure the defendant's attendance at court only when the change in the surety's risk is material. *See generally, Change in Terms or Conditions Under Which Accused in Federal Criminal Cases Was Originally Released on Bail as Affecting Surety's Liability on Bail Bond*, 24 A.L.R.Fed. 580. Here, however, the extent of the change in risk may not matter because the issue is not excuse, but rather whether an altogether different obligation, to guarantee the lawful conduct of the defendant, ever arose. The Government has offered no authority, and we have found none, holding that unilateral action by the magistrate can impose on the bail surety such a new and different obligation. Under these circumstances, the surety would seem to "have a right to stand upon the very terms of their undertaking." *Reese v. United States*, 76 U.S. 13, 21, 19 L.Ed. 541 (1869).

Moreover, even assuming that the standards in *Galvez-Uriarte* applied to this case, the new condition plainly did "materially increase" the sureties' risk. Though the likelihood of the defendant's flight may not have been enlarged, the "break no laws" condition introduced a vast number of new ways in which the sureties might find their bond forfeited, one of which, indeed, has materialized in this case.

The Government argues that the sureties consented in advance to the new condition of release. They did not. The bond refers to the defendant's compliance with future orders of the court "relating to appearance." This language would cover orders stating the times and places that defendant may be required to appear; it does not include the condition that defendant break no local, state or federal law.

Because we hold that the sureties were not bound by the condition added by the Arizona magistrate, we need not decide whether the district court abused its discretion by failing to remit all or part of the forfeiture.

III. Conclusion

The sureties here gave a bond to guarantee the defendant's appearance before the court, not his good conduct. They were not bound by the later condition, imposed without their knowledge or consent, that the defendant break no local, state or federal laws.

The order of forfeiture is REVERSED.