58 F.3d 502
 95 Daily Journal D.A.R. 8922
 UNITED STATES of America, Plaintiff-Appellee,
v.
Alfonso R. FIGUEROLA, Defendant,
Veronica Mas; Fernando Quillahauquy; Maria Sabrogal; Dora
Bruckman; Elliana Sorreila; Glen Jahnsen,
Sureties-Appellants.
 No. 93-50368.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 5, 1994.
Decided July 6, 1995.
 
 Victor M. Torres, San Diego, CA, for defendant.
 Edward C. Weiner, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before: JAMES R. BROWNING, PREGERSON, and BRUNETTI, Circuit Judges.
 PER CURIAM Opinion: Dissent by Judge BRUNETTI.
 PER CURIAM:
 
 
 1
 The sureties on defendant Alfonso Figuerola's bail bond appeal the grant of the government's motion for judgment on default. We reverse and remand for further proceedings.
 
 I.
 
 2
 Figuerola was indicted and arrested for money laundering. A magistrate judge set bail at $150,000 in the form of a fully secured bond. Shortly thereafter, the United States Attorney and Figuerola's lawyer stipulated to a $150,000 bond secured by the signatures of Figuerola's wife of four months, her sister, and four of her friends, and by the home of two of these friends.[1] The magistrate judge approved the stipulation without comment, although she had previously rejected similar provisions as inadequate. The six sureties signed forfeiture agreements pledging to pay the total of $150,000 severally as well as jointly; the two who had agreed to do so deposited with the district court a deed of trust conveying their home to the government.
 
 
 3
 Figuerola abided by the conditions of his release for about four months until confronted by an agent with information that he had been charged previously with a drug offense under an alias. Figuerola disappeared the same day and remains at large.
 
 
 4
 The government moved for judgment on default against Figuerola and the sureties in the amount of the bond. The district court granted the motion. The sureties appeal.
 
 II.
 
 5
 The sureties contend the bond was not enforceable because they did not understand the terms of the contract. We remand for a hearing on this issue.
 
 
 6
 A bail bond is a contract between the government, the defendant, and his sureties, and is governed by general contract principles. See United States v. Toro, 981 F.2d 1045, 1047 (9th Cir.1992). One of these principles is that "the unilateral mistake of one party is grounds for relief where the other party 'knew of or has reason to know' of the mistake." Libby, McNeil & Libby v. United Steelworkers, 809 F.2d 1432, 1434 (9th Cir.1987); see also Restatement of the Law of Contracts 2d Sec. 153 (1981). The sureties point to various circumstances known to the government that suggest the sureties did not understand the obligation they undertook under the bond.
 
 
 7
 The court acknowledged that the sureties, recent immigrants from Argentina and Peru, were primarily Spanish speakers and that even "the spokesperson for the group would have been more comfortable in the Spanish language." Counsel for the defendant informed the court the sureties had no counsel and were unfamiliar with American legal processes or bail procedures. The forms signed by the sureties, though approved by government counsel, contained many obvious deficiencies. One surety signed a form clearly intended for the defendant, concluding "I acknowledge that I am the defendant in this case and that I am aware of the conditions of release." Despite the statutory requirement that each surety have sufficient assets to pay the amount of the bond,[2] none of the forms signed by the sureties reflected that any of the sureties did.[3] The defendant's wife stated her net worth to be $10,000, while the couple who pledged their home stated their net worth to be $30,000--apparently the joint equity in their home. The other three sureties signed blank affidavit forms containing none of the required financial information. These three sureties did disclose their annual incomes on a separate form, but this information provided further evidence they could not meet an obligation of $150,000: one reported an annual income below the poverty line ($3600), another slightly above ($14,400), and the last an annual income of $36,000.
 
 
 8
 We have encouraged judicial officers "to be alert to the problems such sureties may have in comprehending the risks they assume and to the difficulties some may have in understanding proceedings conducted in English." United States v. Frias-Ramirez, 670 F.2d 849, 852 (9th Cir.1982). Although the bond system is primarily aimed at serving society's interest in securing the appearance of criminal suspects, the justice system should ensure at least minimal fairness to individual sureties, who are frequently family members or friends and may undertake heavy financial responsibility without sufficient understanding. Cf. United States v. Minor, 846 F.2d 1184, 1190 (9th Cir.1988) (stating that one factor in determining whether to set aside all or part of a forfeiture is "whether the sureties were professionals or defendant's friends and family members"). Unfortunately, in this case, despite the magistrate judge's misgivings about the arrangement (she had rejected largely similar terms at the initial bail hearing), she did not speak with the sureties or insist on adequate documentation before approving the stipulated bail agreement.
 
 
 9
 At the forfeiture hearing, the sureties indicated they had been mistaken as to their obligation under the bond and offered to testify regarding their lack of understanding. The court declined to hear the testimony because of the press of its calendar, and because "[t]hey've been given two chances before[:] the last hearing and today." But the court had continued the first hearing because the sureties had no counsel and declined to hear the witnesses at the second hearing even though advised that four of the sureties were in the courtroom and available to testify.
 
 
 10
 Rejection of the offer was error. The sureties' representation to the court that they had not understood their obligations under the bond, supported by the sureties' language problem, their ignorance of the law, the many deficiencies in the bond documents, the failure to provide required information reflecting the sureties' ability to pay, the gross disparity between the sureties' revealed income and assets and the obligation they assumed, and the failure to inform them of the risks, justified further inquiry to determine whether the sureties were entitled to relief because of unilateral mistake.
 
 
 11
 Vacated and remanded for further proceedings.
 
 BRUNETTI, Circuit Judge, dissenting:
 
 12
 I respectfully dissent. The majority opinion stretches to give some of the facts in the record more significance than they have under our law. The district court made no clear error in determining on the facts before it that the sureties had not presented any evidence suggesting that they did not understand the terms of the bail bond when they agreed to act as sureties. The district court did not abuse its discretion in declining to give the sureties a third chance to substantiate their opposition to forfeiture of the bond.
 
 
 13
 The sureties needed to establish that they never assented to the written terms of the bail bond to avoid being bound by its obligations. The sureties needed to show that they did not understand that they pledged $150,000 in consideration for Figuerola's release subject to the conditions of his bail agreement. We should accept the district court's factual determinations about whether the sureties assented to the bond's conditions unless the findings are clearly erroneous. See Ah Moo v. A.G. Becker Paribas, Inc., 857 F.2d 615, 621 (9th Cir.1988).
 
 
 14
 The sureties raised no relevant or credible evidence to suggest that they did not understand their agreement with the government. The sureties' papers in opposition to the government motion for judgment on default raised no supported factual issue about their lack of understanding. The main ground for their opposition was an argument that they should not be bound to the bail bond's terms because the government did not disclose the alleged fact that Figuerola was a government informant. The only basis for this allegation was their attorney's "experienced eye." The majority elevates this allegation, based only on an attorney's keen eye, into a part of the factual record, even though the district court found that the allegation was spurious. Opinion, supra, at n. 1. The sureties' allegation that they did not understand the surety forms they signed was a secondary issue in their papers, one they failed to support by any sworn affidavit or declaration. The record simply does not support the majority opinion's assertion that the sureties "represent[ed] that they had not understood their obligations under the bond." Id. at 504.
 
 
 15
 The majority opinion suggests that the sureties may not have genuinely assented because they did not sign the surety forms with the assistance of counsel, were unfamiliar with American legal process, and made several technical errors in filling the forms out. Id. at 503. I am not familiar with any authority that deems parties not competent to enter a surety agreement merely because they are not represented by counsel, or that, without the assistance of counsel, a surety obligation is ipso facto unenforceable. Nor is it relevant whether the sureties were acquainted with American legal processes--many American residents may not be familiar with federal pre-trial criminal procedure, but are nonetheless competent to acquaint themselves with the terms of and sign as a surety for a bail bond.
 
 
 16
 Instead, the relevant question was whether the sureties did not understand the essential terms of the bond: They were pledging $150,000 that Figuerola would not jump bail. They presented no sworn testimony in opposition to the government's motion for forfeiture on the bail bond indicating such a lack of understanding. The surety forms all contained essential information like Figuerola's identity as the defendant, the bond amount, and the condition that the bond would be forfeit if Figuerola did not appear for required hearings. All the sureties signed the agreements. The district court did not clearly err in concluding on this evidence that the sureties had not raised any credible allegation that they did not understand the terms of the bail bond, and that any deficiencies in the surety forms were de minimis.
 
 
 17
 The majority opinion also relies on the fact that when the sureties filled out the forms, they declared income and assets that could not cover the bond. I agree with the majority, id. at n. 3, that we are not faced with the issue presented in United States v. Skipper, whether the absence of justification for the bail bond excuses the surety from forfeiture when the defendant jumps bail. 633 F.2d 1177, 1180 (5th Cir.1981). Our opinion constitutes no authority for the proposition that the surety may be so excused. However, I differ with the opinion when it uses the lack of justification as one of several reasons to disturb a determination by the district court that was supported by the factual record and well within its discretion.
 
 
 18
 The district court acknowledged that the sureties are more fluent in Spanish than English. However, at the first forfeiture hearing, one of the sureties spoke on behalf of all of them to the court in English. The sureties could have filled out surety forms in Spanish if they did not understand the English forms. The district court determined from this evidence, and from the fact that only "bald assertions," unsubstantiated by any factual testimony, supported the charge that a language barrier existed, that the sureties' primary fluency in Spanish did not prevent them from understanding the terms of the bail bond. There was no clear error in this finding.
 
 
 19
 The majority opinion criticizes the district court for its failure to disclose the risks of suretyship and for the its failure to take greater precaution in light of the sureties' primary fluency in Spanish. Opinion, supra, at 503 (citing United States v. Frias-Ramirez, 670 F.2d 849 (9th Cir.1982)). But the majority places greater weight on our holding in Frias-Ramirez than that holding can bear. In Frias-Ramirez, we expressly declined to require district courts to hold hearings to certify that the sureties understand their obligation. Frias-Ramirez, 670 F.2d at 852. Such a hearing is commendable, and removes any doubt about whether the sureties understand their obligation, but we have not held that it is required. Id.
 
 
 20
 Of course, the crux of the majority opinion is not that the district court interpreted the facts before it to a clearly erroneous conclusion, but that these facts were serious enough that the district court should have explored them further. The majority holds that the district court's "rejection" of the sureties' attorney's offer of further proof "was error." Opinion, supra, at 504. The majority misstates our duty on appellate review. We do not review this decision for error, we review it for abuse of discretion.
 
 
 21
 Until the offer of further proof made by the sureties' attorney, there was no direct evidence that the sureties did not understand the terms of the bail bond. Their attorney offered to cure this absence by filing sworn declarations by the sureties that they do not understand English, and he promised to submit these declarations within a few days of the hearing. The attorney asked in effect for a continuance, the denial of which we disturb only on a showing of clear abuse of discretion. Sablan v. Department of Finance of the Commonwealth of the Northern Mariana Islands, 856 F.2d 1317, 1321 (9th Cir.1988).
 
 
 22
 The district court did not abuse its discretion in denying the offer to take the sureties' testimony. The declarations the attorney offered to provide the court were only relevant to whether the sureties understood English, not to whether they understood the essential terms of the bail bond. The offered testimony was even less relevant when one considers, as the district court did on the record, that the sureties could have filled out surety forms in Spanish. The district court had already continued the forfeiture hearing once. Finally, when the district received the attorney's offer, it had before it no hard substantiation for the lack-of-understanding claim. The district court did not clearly abuse its discretion by deciding that there was no point in continuing the forfeiture proceeding any longer to give the sureties more time to substantiate an as-yet unsubstantiated claim with questionable proof.
 
 
 23
 For these reasons, I would affirm the district court's refusal to allow further testimony and its order that the bail bond was forfeit.
 
 
 
 [1]
 The stipulation also abandoned the magistrate's earlier condition that the court would hold a Nebbia hearing before approving the bond agreement. See United States v. Nebbia, 357 F.2d 303 (2d Cir.1966). Figuerola was apparently a confidential informant, and the sureties suggest the omission of a Nebbia hearing and acceleration of the bond process by stipulation reflected the government's greater desire for Figuerola's rapid return to the street than for assuring that the sureties were able to pay the bond
 
 
 [2]
 Each surety must "have a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond." 18 U.S.C. Sec. 3142(c)(1)(B)(xii). To demonstrate compliance with this requirement, each prospective surety must "provide the court with information regarding the value of the assets and liabilities of the surety ... and the nature and extent of encumbrances against the surety's property." Id. "No bond shall be approved unless the surety thereon appears to be qualified." Fed.R.Crim.P. 46(d)
 
 
 [3]
 The sureties contend that the failure to justify as required by Rule 46(d) and the other deficiencies in the bond documents were sufficient without more to render the bond agreement void. The government responds that "[s]ince Rule 46(d) was designed to protect the government [the sureties] cannot avail themselves of the magistrate's failure to follow its mandate." United States v. Skipper, 633 F.2d 1177, 1180 (5th Cir.1981). This circuit has not yet considered the issue, and we need not do so now