**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bertha NORIEGA–SARABIA, aka
Maria de los Angeles Garcia–
Salazar, Defendant,**

**and**

**Dolores Roque, Appellant.**

No. 96–50394.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1997.

Decided June 24, 1997.

John Lanahan, San Diego, CA, for Appellant.

Timothy D. Coughlin, Assistant United States Attorney, San Diego, CA, for Plaintiff-Appellee.

Before: HUG, Chief Judge, and FERNANDEZ and RYMER, Circuit Judges.

FERNANDEZ, Circuit Judge:

Dolores Roque agreed to act as surety on a bail bond for Maria de los Angeles Garcia-Salazar, who was prosecuted in this action as Bertha Noriega–Sarabia. When Garcia failed to appear for sentencing after she had pled guilty, the district court entered "Judgment on Default" on the bail bond. In so doing, the district court rejected Ms. Roque's claims that technical defects in the execution of the bond or changes after it was signed invalidated it. This appeal followed. We affirm.

## BACKGROUND

Ms. Roque agreed that she would act as a surety on a bail bond for Garcia, a person who was neither a friend nor a relative. Garcia was charged with narcotics offenses— conspiracy to possess cocaine with the intent to distribute it and actual possession with intent to distribute it. Bail was set at $100,000. Ms. Roque signed an "Appearance Bond," which obligated her in that amount. She also signed an "Affidavit of Sureties" which indicated that she had a net worth of $60,000 contained in the equity in her home, and she signed a deed of trust on her home to secure the $100,000 bond. She did not

sign a "Justification of Sureties" form which appeared on the reverse side of the Appearance Bond, but the pertinent information did appear in the Affidavit of Sureties.

Magistrate Judge Ruben B. Brooks then held a hearing for the purpose of examining the proposed sureties, including Ms. Roque and her husband, Armando Roque. The magistrate judge was concerned about the fact that neither Ms. Roque nor Mr. Roque knew Garcia, so he carefully explored that and explained the dangers of acting as a surety. They assured him that they understood what they were doing and that they were undertaking that obligation because Mr. Roque felt beholden to a relative of Garcia. The relative had once signed on as a surety for a bail bond for Mr. Roque.

At the hearing, it also developed that Mr. Roque thought that the equity in the home was actually much more than $60,000, and Ms. Roque indicated that the equity was closer to $70,000. At any rate, the bond amount was left at $100,000, and the magistrate judge indicated to Ms. Roque that she could be personally pursued for any difference between the equity in the home and the bond. Ms. Roque said that she understood that.

Thereafter, Garcia pled guilty to the cocaine conspiracy charge, and a sentencing date was set. However, before she was actually released on bond, Mr. Roque spoke to a pretrial services officer and indicated that he had thought that Garcia was going to be subject to electronic monitoring. He indicated that he, and presumably Ms. Roque, were not willing to be sureties unless that condition did exist. The district court then imposed the condition, and Garcia was released. Unfortunately she absconded, and as of the date of the Judgment on Default on the bond, she had not been found.

## JURISDICTION AND STANDARD OF REVIEW

■ The district court had jurisdiction pursuant to 18 U.S.C. §§ 3231 & 3142. We have jurisdiction pursuant to 28 U.S.C. § 1291.

The issues presented to us all deal with the legal validity of the bond. We review those questions of law de novo. *See United States v. Toro,* 981 F.2d 1045, 1047 (9th Cir.1992).

## DISCUSSION

Ms. Roque's first set of attacks on the bond proceed from her claim that there were certain technical defects, which made the bond void ab initio. Her second set deals with changes in Garcia's situation after the bond was executed—the requirement of electronic monitoring and the guilty plea. Neither set can be successful.

### A. *Legal Sufficiency.*

Ms. Roque asserts that the bond was invalid because she did not sign the justification of sureties form, because her net worth was not the full amount of the bond, and because she did not sign the bond at the same time as Garcia signed it. None of these assertions is fruitful.

There can be no doubt that the bail statute provides that a "surety shall have a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond." 18 U.S.C. § 3142(c)(B)(xii). Moreover, the Federal Rules of Criminal Procedure provide that a surety "shall justify by affidavit" and that "[n]o bond shall be approved unless the surety thereon appears to be qualified." Fed.R.Crim.P. 46(d). It is upon those provisions that Ms. Roque founds her claim that the bond in this case was void as to her.

■ We have previously reserved the issue of whether technical defects can serve to void a surety bond and, thus, release the surety. *See United States v. Figuerola,* 58 F.3d 502, 504 n. 3 (9th Cir.1995) (per curiam); *cf. United States v. Frias–Ramirez,* 670 F.2d 849, 851 & n. 1 (9th Cir.1982) (equity of $185,000 allowed to be pledged for $250,000 surety bond, but no single surety had anything close to that amount). We now confront that question and agree with the Fifth Circuit that the answer is no. *See United States v. Skipper,* 633 F.2d 1177, 1180 (5th Cir.1981). In *Skipper,* the magistrate judge had not required the securities to justify by

affidavit. That violated the demands of Rule 46(d), and the sureties claimed that they were, therefore, released from the bond. The court said:

> Little has been written about the justification requirement, but the case law makes clear that sureties must reveal their property resources so that the government can be assured of their financial ability and so that the court can be satisfied that they have an incentive and purpose to secure the defendant's presence at trial. Since Rule 46(d) was designed to protect the government, the appellants cannot avail themselves of the magistrate's failure to follow its mandate.

*Id.* (citations omitted); *cf. United States v. Nebbia,* 357 F.2d 303, 304 (2d Cir.1966) (the purpose of the bond is to assure that the defendant appears for trial).

That is a most sensible reading of the law. It may be rather risky to allow a defendant free on bail when the sureties have not sworn to their own net worth, or when their net worth is not sufficient to cover the whole amount of the bond. But if it is risky, the danger is to those who are supposed to be assured that the defendant will appear. The court, the government, and the public may be doubly disappointed when a defendant flees, if the sureties cannot, or will not, abide by their promises. On the other hand, the sureties do remain personally liable, and courts often feel that the income from their jobs is an additional resource, even though that income is not a part of their net worth. In fact, in this case the magistrate judge explained to Ms. Roque that she would remain liable, even if her home equity did not fully cover the bond amount in case the defendant fled. We do not say that looking to possible future income complies with the net worth requirement. We do say that a surety cannot complain because he has failed to actually swear to a sufficient net worth, or because a lesser net worth might mean that the full amount of the bond will never be recovered. A default by the surety cannot logically redound to his own benefit. He will not, in any event, be required to do more than he promised to do; he might wind up doing much less. That brings us to Ms. Roque's own situation.

Her assertion that she did not justify by affidavit is a bit puzzling. While it is true that she never signed the form entitled "Justification of Sureties" on the back of the Appearance Bond, she did sign a separate affidavit in which she swore to the value of the property, the encumbrances against it, and her resulting net worth. Moreover, at the justification hearing she and Mr. Roque gave sworn testimony regarding the value of the property and their equity in it. That actually indicated that their net worth may have been even higher than the amount shown in the affidavit. The claim that a form entitled "Justification of Sureties" was not signed cannot free her from her obligation. Even less efficacious is the argument that Ms. Roque did not sign at the same time and place as Garcia. Neither the law nor the rules require that she do so, and the Appearance Bond does not indicate that she did.

Moreover, the mere fact that Ms. Roque's net worth was not up to the amount of the bond does not help her case. It is true that in some formal sense the magistrate judge made the government more insecure when he accepted sureties whose net worth was lower than the amount of the bond. But everyone in the courtroom, including the government, was unconcerned about the possibility that the assets themselves might not cover the full amount of the bond, as long as Ms. Roque remained personally liable upon it. Mr. Roque thought that the property value would cover because he believed that the appraisal was far too low. The magistrate judge was not entirely satisfied with that and explained with great clarity that Ms. Roque would remain liable "to make up the full $100,000." He then asked, "And you're still willing to do this?" Ms. Roque said "Yes," as did Mr. Roque. If anyone suffers from an unavailability of assets to cover the bond, it will be the government.

Finally, to the extent that Ms. Roque suggests that she did not understand what she was doing or that she did not intend to be a surety, the record clearly belies those claims. This is not a case where it could be said that, due to language barriers or the like, the

surety misunderstood the obligation. *Cf. Figuerola*, 58 F.3d at 503–04. Nor could it be said that no intent to be bound was evinced or that the bond was not signed, so that there was no intent to become a surety. *Cf. United States v. Jackson*, 465 F.2d 964, 965–66 (10th Cir.1972). Rather, this is a case where the magistrate judge followed procedures we have commended and, with great sensitivity, assured that Ms. Roque did understand the nature of the risk. *See Frias–Ramirez*, 670 F.2d at 852. It is a case where the surety signed the bond, an affidavit, and even a deed of trust on her home for the purpose of securing the bond. It is a case where the magistrate judge even asked, "Why would you put up your home for a stranger?" Mr. Roque gave a reason, and Ms. Roque remained unfazed. She did not demur. She cannot now complain that the obligations and risks were unknown to her.

### B. *Changed Conditions.*

■ Ms. Roque asserts that when electronic monitoring was imposed upon Garcia, the conditions of release changed. That, she says, should be enough to release her from her bond. She relies upon two of our cases for that proposition. *See United States v. LePicard*, 723 F.2d 663 (9th Cir.1984); *United States v. Galvez–Uriarte*, 709 F.2d 1323 (9th Cir.1983). Neither is apposite because in each of those cases the surety's risk was substantially increased by a change in conditions.

In one of them, after the bond was signed the district court had added the condition that the defendant " 'break no laws,' " and the government sought to have bail forfeited because the defendant had broken laws while on bail. *LePicard*, 723 F.2d at 665. As we said, the sureties had bonded "the defendant's appearance before the court, not his good conduct." *Id.* at 666. In the other, the condition when the bond was given provided that the defendant "could not leave California without permission of the court." *Galvez–Uriarte*, 709 F.2d at 1324. The United States then encouraged him to leave the country without the benefit of a court order. *Id.* at 1325. That, we said, was a "material breach of the Government's implied cove-

nant," which released the surety when the defendant did not return. *Id.; see also United States v. Aguilar*, 813 F.Supp. 727, 729 (N.D.Cal.1993) (bond conditions provided that defendant could not travel outside of the Northern District of California; when government had the defendant do so, the risk was increased).

Here, no increase in the dangers faced by the sureties occurred. At the behest of Mr. Roque, an additional condition was added, which helped assure that Garcia would appear when she had to. That could only have made the surety more secure and did not serve to release her from the bond.

■ Ms. Roque fares no better with her claim that as soon as Garcia pled guilty the conditions changed and she was released from the bond. She cites no authority for that proposition, and we have found none. No doubt it would come as a surprise to the government to discover that bail bonds are automatically cancelled as soon as a defendant pleads or is found guilty.

At any rate, we need not consider whether there could be conditions under which a surety was released as soon as a guilty plea was entered. For example, a bond could be written that way. Suffice it to say that this was not such a case. Indeed, the bond specifically assured that the defendant would "abide any judgment by surrendering . . . to serve any sentence." That was a clear indication that the bond could even continue beyond the sentencing date itself. Lest there be any doubt, the bond went on to provide that it was "a continuing bond (including any proceeding on appeal or review) which shall continue in full force and effect until such time as the undersigned are duly exonerated." Again, that makes it clear that Ms. Roque agreed to continue as surety beyond the date of any conviction or plea. She is bound by that contract. *See Toro*, 981 F.2d at 1047 (general contract principles govern bail bonds).

### CONCLUSION

Ms. Roque, at the behest of Mr. Roque, agreed to become surety for a defendant whom she did not know and for whom she

placed her home in jeopardy. When the defendant fled, bail was forfeited. Ms. Roque is understandably horrified by the result of her kindness, but she cannot avoid her bond obligation based on the technical defects that she has pointed to—her failure to sign a document entitled "Justification of Sureties," and her failure to have a net worth as high as the face amount of the Appearance Bond. Nor did the government or the district court do anything to increase her risk beyond that contemplated at the time she became a surety.

Thus, while we do hear her monody, there is nothing we can now do to palliate her pain. The bond was and remains valid.[1]

AFFIRMED.

1. We emphasize that this is not an appeal from a request for remission. *See* Fed.R.Crim.P. 46(e)(4). Nothing in this opinion is intended to preclude Ms. Roque from pursuing any right to remission which she may have, or from arguing any of her equities at that time. *See United States v. Amwest Surety Ins. Co.,* 54 F.3d 601, 603–05 (9th Cir.1995).