Philip J. Sherman

*v.*

Southern Advertising Co., Inc.

(*Knoxville,* September Term, 1955)

(May Session, 1956)

Opinion Filed June 8, 1956.

CAMERON & TURNER, Chattanooga, for appellant.

FOLTS, BRAMMER, BISHOP & THOMAS, Chattanooga, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This is a suit for a declaratory judgment in which the complainant seeks to have voided by the court a lease contract which the defendant had entered into with the former owners of the property.

The facts which give rise to this suit are not in dispute and are as follows:

The property involved herein, and known as the "El Dorado Club" was originally owned by several people by the name of Hall. On September 17, 1952, LaVerne Hall, as attorney in fact, leased the premises to Edward Butler and wife, Catherine Butler, to use as a tourist court and night club. On the same date the Butlers subleased to the defendant, Southern Advertising Company, whereby this defendant was to erect an outdoor signboard on the premises for a period of ten years.

In consideration of this sublease the Southern Advertising Company agreed "to paint the inside and outside"

of the "dance hall", "rewire the same building", and patch the roof. These repairs were to be made the first five years of the lease. In consideration of the last five years the defendant agreed to "repair the cabins", but "only after the first three years has expired."

The "El Dorado Club" had a bad reputation, and as a result was closed and padlocked on July 14, 1953, by order of the Criminal Court of Hamilton County. The complainant, Sherman, purchased this property on August 31, 1953, from Halls, subject, of course, to the leasehold interest of the Butlers. Having purchased the El Dorado Club property, after it had been padlocked as a public nuisance, the complainant, Sherman, filed a petition asking the Criminal Court to release the property. This petition was sustained on condition that the club be conducted in a lawful manner. After acquiring ownership of the premises the complainant set about tearing down and rebuilding the property "as it was unfit for use."

The bill charges among other things, not necessary to repeat, that the defendant "knew or should have known the reputation of the business known and operated as the El Dorado Club, and that said business was such that it might be abated by law"; that it was abated and that as a result thereof the executory features of said sublease could not be fulfilled and the consideration had failed. It is further charged that defendant's sublease contemplated continuance of the business for the benefit of former lessees, the Butlers. The prayer of the bill was, as follows:

"That the Court determine and declare the rights of the parties, and that, if so advised, the Court declare the lease invalid because of conditions set forth

in this complaint, and that defendant be required to dismantle and remove the enormously large sign which it has erected on said premises under said lease agreement.''

The defendant demurred to the bill on several grounds. Some of which were overruled. The Chancellor, however, sustained the following:

"6. There is no allegation that defendant is in any way in default in said lease or that defendant is at fault for failing to perform any provision thereof.

\*    \*    \*    \*    \*

"8. There are no acts or omissions of defendant pertaining to the lease contract in which complainant has any rights.''

An appeal was prayed and granted to this Court, and assignments of error were seasonably filed.

■ Was the Chancellor in error in sustaining the demurrer? We think not. Moreover, we feel that he should have sustained the demurrer upon this additional ground, to wit, No. 9, which reads as follows:

"Because the complainant is not entitled to the relief he prays, nor to any relief, his bill showing that he had actual notice of this defendant's equities when he made the purchase.''

The authorities cited by counsel in support of the complainant's theory, that the lease contract was executory, in that the Southern Advertising Company was obligated to do something in the future, i.e. repaint and repair the building, have no application. True it is that it had agreed to do so. But the complainant himself made it impossible for the defendant to paint and repair the buildings by tearing them down as soon as he became

the sole owner of "El Dorado". In these circumstances there is no rule of law, or principle of equity, that would justify the court in ordering that the defendant remove its outdoor sign on the ground that said defendant's lease contract had become impossible of performance. The law will have to leave the parties where it finds them. Moreover, the defendant was in no way responsible for the conditions which brought about the closing of the El Dorado Club, or the dilapidated condition of the buildings and which had become "unfit for use". The defendant's sublease of these premises was in no way dependent on whether the El Dorado night club was operated legally or illegally or not at all. The complainant does not allege that the original lease was invalid. The only ground upon which he seeks a termination of the sublease is subsequent occurrences with which the defendant was in no way responsible. There is no charge in the bill that the defendant advertising company is in default as to any duty devolving upon it, and which is possible for it to perform.

Considering the nature of the defendant's contract to repaint and repair certain buildings which had been torn down by the complainant, it is settled law that the promisor's obligation is not enforceable where the buildings are not in existence when the duty is to be performed.

In Volume 12, Am.Jur. (Contracts), sec. 381, the law as applicable to the instant case is thus stated:

"If the impossibility of performance arises directly or even indirectly from the acts of the promisee, it is a sufficient excuse for nonperformance. This is upon the principle that he who prevents a thing may not avail himself of the nonperformance which he has oc-

casioned. Nonperformance of a promise in accordance with its terms is excused if performance is prevented by the conduct of the adverse party.''

Numerous authorities, both State and Federal decisions, are cited in support of the above text.

██ There was no such privity of estate or contractual relationship between the complainant and the defendant as would justify the court in rendering a declaration in this case.

The assignments of error are overruled, and the Chancellor's decree is affirmed.