## In re SANFORD & SONS BAIL BONDS, INC.[1]

Court of Criminal Appeals of Tennessee, at Knoxville.

May 30, 2002.

---

1. In compliance with Tenn. R.App. P. 30(b)(2) and (d)(2), the parties have styled their pleadings before this court *"State of Tennessee v. Florentin[o] Hernandez"* and have simply added the name of the appellant and its status before this court. Tenn. R.App. P. 30 provides that papers addressed to this court should contain a caption setting forth the title of the case as it appeared in the trial court. In this case, documents relating to the bail bond forfeiture proceedings were styled in accordance with the underlying criminal case. Notwithstanding the style of the case in the trial court and because Sanford & Sons Bail Bonds, Inc., rather than Mr. Hernandez, is the appellant in these proceedings, we have styled this opinion "In re: Sanford & Sons Bail Bonds, Inc."

Robert L. Jolley, Jr., and Charles Currier, Knoxville, Tennessee, for the appellant, Sanford & Sons Bail Bonds, Inc.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Chris Scruggs, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

NORMA McGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

The appellant, Sanford & Sons Bail Bonds, Inc., appeals the judgment of the Hamblen County Criminal Court forfeiting $5,000 bail in the case of criminal defendant Florentino DeJesus Hernandez. Following a review of the record and the parties' briefs, we reverse the judgment of the trial court and remand this case for proceedings consistent with this opinion.

**Tenn.Code Ann. § 16–5–108(a)(2) (1994)** [2]**; Judgment of the Criminal Court is Reversed and Remanded.**

### I.

The instant case arose from a criminal prosecution in which the State preliminarily charged Florentino DeJesus Hernandez, allegedly a citizen of Mexico, with driving under the influence (second offense), violating the implied consent law, and driving on a revoked license. The Hamblen County General Sessions and Criminal Courts set bail in Hernandez's case in the amount

2. *See Columbia Bonding Co. v. State*, 225 Tenn. 719, 476 S.W.2d 633, 633–634 (1972)(interpreting the predecessor statute to Tenn.Code Ann. § 16–5–108(a)(2)); *see also Indemnity Ins. Co. of North America v. Blackwell*, 653 S.W.2d 262, 264–265 (Tenn.Ct.App. 1983).

of $5,000, and, on July 25, 2000, the appellant, Sanford & Sons Bail Bonds, Inc., agreed to secure Hernandez's appearance before the General Sessions Court and "from day to day until the case is finally concluded and if, the Principal be bound over to the Grand Jury, then before the Criminal Court of Hamblen County on the 9 day of October, 2000, ... and until the case there be finally concluded." The bail bond specified that Hernandez would "not depart the Court without leave."

Subsequently, Hernandez was bound over to the Hamblen County Grand Jury, which indicted the defendant for driving under the influence (second offense) and driving on a revoked license. Hernandez, however, failed to appear before the Hamblen County Criminal Court on October 9, 2000. Accordingly, the trial court issued a capias for Hernandez's arrest. Additionally, the trial court entered a conditional judgment of forfeiture against the defendant and Sanford & Sons Bail Bonds, Inc., and issued a writ of scire facias to notify the appellant of the conditional judgment. The Hamblen County Sheriff's Department served the appellant with the writ of scire facias on October 17, 2000.

On June 11, 2001, prior to the entry of a final judgment of forfeiture, the appellant petitioned the court for relief pursuant to Tenn.Code Ann. § 40–11–204 (1997), asserting in the petition that the Hamblen County Sheriff's Department had surrendered Hernandez to the Immigration and Naturalization Service (hereinafter the INS), which in turn had deported the defendant to Mexico. The trial court summarily denied the appellant's petition without a hearing, albeit the court apparently reviewed intake records from the Hamblen County Sheriff's Department indicating that Hernandez was arrested by "Agent Perkins" on August 3, 2000, and thereafter held in the Hamblen County Jail for the INS until being surrendered to that agency's custody on August 4, 2000. In a written order denying the appellant's petition for relief, the court simply concluded that Hernandez's deportation by the INS to Mexico did not constitute a ground for relief. Accordingly, the court entered a final judgment of forfeiture.

## II.

Sanford & Sons Bail Bonds, Inc., asserts in this appeal that the trial court abused its discretion by failing to relieve the appellant of its obligation under the bail bond on the basis of the surrender of Hernandez by the Hamblen County Sheriff's Department to the INS and Hernandez's consequent deportation to Mexico. The appellant further asserts that, to the extent the record fails to establish whether Hernandez in fact was deported and any relevant circumstances surrounding his deportation, the trial court abused its discretion in failing to afford the appellant a hearing prior to the entry of the final judgment. During oral argument before this court, the State conceded that the appellant was afforded neither a hearing nor an opportunity to make an offer of proof for purposes of appeal. Nevertheless, citing this court's recent opinion in *In re: Paul's Bonding Co.*, 62 S.W.3d 187 (Tenn.Crim.App.2001), the State asserts in its brief that "[i]t is the bonding company's business to obtain relevant information regarding deportation and extradition prior to entering into bail bond agreements with Mexican citizens. Deportation is part of the risk assumed by a bonding company when entering into such agreements."

## III.

Preliminarily, we note that our consideration of the parties' arguments occurs against the backdrop of a criminal defendant's right to bail, the role of the profes-

sional bondsman in our system of criminal justice, and the nature of the "bail bond" itself. Article I, Section 15 of the Tennessee Constitution provides "[t]hat all prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident, or the presumption great." Our supreme court has held that "[u]nder the foregoing constitutional provision [a criminal defendant] is entitled to bail as a matter of right" in all except capital cases. *Wallace v. State,* 193 Tenn. 182, 245 S.W.2d 192, 193 (1952); *see also State ex rel. Hemby v. O'Steen,* 559 S.W.2d 340, 341 (Tenn.Crim.App.1977)(observing that "[t]here is no doubt that the right to bail is mandatory in all except capital cases"). The legislature has codified the right to bail at Tenn.Code Ann. § 40–11–102 (1997). The right to bail, however, does not ensure a criminal defendant's ability to pay the amount of bail set by the court. Rather, a private, profit-driven bail bonding industry enables the average citizen to secure enough money to obtain release, in addition to relieving significant pressures upon local jails to house criminal defendants awaiting trial. Holly J. Joiner, Note, *Private Police: Defending the Power of Professional Bail Bondsmen,* 32 Ind. L.Rev. 1413, 1420–1421 (1999).

The bail bond itself is a contract between the government on the one side and the criminal defendant and his surety on the other, whereby the surety assumes custody of the defendant and guarantees to the State either the appearance of the defendant in court or the payment of the full amount of the bail set by the court. *Indemnity Ins. Co. of North America v. Blackwell,* 653 S.W.2d 262, 264 (Tenn.Ct.

App.1983); 8 C.J.S. *Bail* § 4, at 12–13 (1988); *see also* Tenn.Code. Ann. § 40–11–122 (1997).[3] Typically, prior to the execution of a bail bond or simultaneously therewith,

> [a professional] bondsman and the defendant form a contract in which the bail bondsman agrees, for a fee, to act as the defendant's surety. In addition to paying the fee, the defendant agrees to appear in court for all scheduled appearances. The bondsman only makes a profit when he is able to collect fees from the defendant and avoid paying the amount of the bond to the court.... His business depends on the appearance in court of his clients.

> There is, of course, risk that the defendant will sign the contract with the bondsman, secure release and leave the jurisdiction or refuse to appear in court. To protect his investment, the bondsman must be thorough not only in assessing the risk of flight before writing the bond, but in keeping tabs on the defendant after the bond is written. *"The profit motive is presumed to insure diligent attention to his custodial obligation."*

Holly J. Joiner, *supra,* at 1422 (footnotes omitted)(emphasis added).

Because the bail bonding business is closely related to the criminal justice system, it is strictly regulated by the government, including the circumstances under which a bail bonding company may obtain relief from forfeiture when it fails to fulfill its obligation under a bail bond. In *In re: Paul's Bonding Co.,* 62 S.W.3d at 193–194, this court addressed the requirements of

**3.** A defendant may execute a bail bond without a surety by depositing with the court a sum of money in cash equal to the amount of bail or executing a deed of trust conveying to the court clerk in trust real estate worth one and one-half times the amount of bail. Tenn.

Code. Ann. § 40–11–118 (1997); Tenn.Code Ann. § 40–11–122(1). The execution of " 'secured' appearance bonds," however, is a more common practice. *State v. Clements,* 925 S.W.2d 224, 225 (Tenn.1996); *see also* Tenn.Code Ann. § 40–11–122(1), (2), & (3).

the statutes governing the forfeiture of bail, the focus of our discussion being the extent to which sureties may obtain relief from forfeiture pursuant to Tenn.Code Ann. § 40–11–204. In particular, we emphasized our prior observation in *State v. Shredeh*, 909 S.W.2d 833, 836 (Tenn.Crim.App.1995)(citing *State v. Frankgos*, 114 Tenn. 76, 85 S.W. 79, 80–81 (1905))(emphasis added), that a trial court's discretionary authority to relieve sureties from liability pursuant to Tenn. Code Ann. § 40–11–204 is limited to "extreme cases, such as the death of the defendant or some other condition making it *impossible* for sureties to surrender the defendant; the good faith effort made by the sureties or the amounts of their expense are not excuses." *See In re: Paul's Bonding Co.*, 62 S.W.3d at 194; *see also State v. Le Quire*, 672 S.W.2d 221, 222–223 (Tenn.Crim.App.1984).

This restrictive interpretation of Tenn. Code Ann. § 40–11–204 is grounded in part in public policy considerations, *Frankgos*, 85 S.W. at 81, but also seemingly stems from the rule articulated by the United States Supreme Court in *Taylor v. Taintor*, 16 Wall. 366, 83 U.S. 366, 369 & 371, 21 L.Ed. 287 (1873), that a surety will be relieved of its obligation under a bail bond only when performance is rendered impossible by a supervening act of God, act of the State that is the beneficiary of the bail bond, or act of the law that is operative in the beneficiary State and obligatory in its effect upon her authorities. *Cf. Bobo v. Patton*, 53 Tenn. 172, 173 (1871). The rule articulated in *Taylor* is, in turn, an expression of the common law of contracts

that if a party charge himself with an obligation possible to be performed, he must abide by it unless performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties will not excuse performance. Where the parties have made no provision for a dispensation, the terms of the contract must prevail.

*Columbus Ry. Power & Light Co. v. Columbus*, 249 U.S. 399, 412, 39 S.Ct. 349, 353, 63 L.Ed. 669 (1919). A corollary to the rule articulated in *Taylor* is that exoneration is precluded when the surety's performance of its obligation under the bail bond is rendered impossible by the criminal defendant or the surety itself, *Taylor*, 83 U.S. (16 Wall.) at 370 & 374, a corollary that we believe flows alike from our restrictive interpretation of Tenn.Code Ann. § 40–11–204, except where otherwise provided by statute, *see, e.g.*, Tenn.Code Ann. § 40–11–201(b) (1997). *Cf. Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 724–725 (Tenn.Ct.App.1998)("A party is not relieved of liability for his nonperformance of a contract based upon the defense of impossibility of performance where the impossibility is caused by the party's own conduct or where the impossibility is caused by developments which the party could have 'prevented or avoided or remedied by appropriate corrective measures.' ").[4]

We also elaborated in *In re: Paul's Bonding Co.*, 62 S.W.3d at 195, that, in any event, a ground for relief asserted by the surety will not constitute an "extreme case" for purposes of Tenn.Code Ann. § 40–11–204 if it is the realization of a risk assumed by the surety in entering into the bail bond agreement. In other words,

---

**4.** It is worthy of emphasis that the common law is only relevant in determining the relief available to a surety to the extent we interpret the statutes governing the forfeiture of bail

bonds to be consistent with the common law. *Cf., e.g., State v. Gann*, 164 Tenn. 601, 51 S.W.2d 490, 491 (1932).

"[i]mpossibility does not excuse nonperformance where the promisor has indicated an intent to assume the risk thereof." 17A Am.Jur. 2D *Contracts* § 684, at 691 (1991). Moreover, "[w]here performance becomes impossible by contingencies which should have been foreseen and provided against in the contract but were not, performance will not be excused." *Wilson v. Page*, 45 Tenn.App. 475, 325 S.W.2d 294, 298 (1958).

■ Consistent with the above principles, the United States Supreme Court in *Reese v. United States*, 9 Wall. 13, 76 U.S. 13, 21–22, 19 L.Ed. 541 (1869), emphasized that, by entering into a bail bond agreement, a surety does not assume the risk that the State will interfere with the surety's performance of its obligation under the bail bond. Specifically, the Court noted that there exists an "implied covenant on the part of the principal with his sureties ... that he will not depart out of [the territory of the United States] without their assent," and

> [t]here is also an implied covenant on the part of the government, when the recognizance of bail is accepted, that it will not in any way interfere with th[e] covenant between [the principal and his sureties], or impair its obligation, or take any proceedings with the principal which will increase the risks of the sureties or affect their remedy against him.

*Id.* A state's material breach of this implied covenant will relieve a surety of its obligation under a bail bond. *Id.* at 22; *see also, e.g., United States v. Galvez–Uriarte*, 709 F.2d 1323, 1324–1325 (9th Cir.1983); *State v. Liakas*, 165 Neb. 503, 86 N.W.2d 373, 377–380 (1957); *Castaneda v. State*, 55 S.W.3d 729, 731 (Tex.Ct.App. 2001), *petition for discretionary review granted*, (Tex.Crim.App.2002). Again, however, the state's breach must be the cause of the surety's inability to satisfy its obligation under the bail bond. *In re:*

*Paul's Bonding Co.*, 62 S.W.3d at 196; *see also United States v. Egan*, 394 F.2d 262, 265–266 (2d Cir.1968); *People v. Argonaut Ins. Co.*, 64 Cal.App.3d 665, 134 Cal.Rptr. 614, 615 (1976); *cf. generally Sherman v. Southern Advertising Co.*, 200 Tenn. 262, 292 S.W.2d 36, 38 (1956)(" 'If the impossibility of performance arises directly or even indirectly from the acts of the promisee, it is a sufficient excuse for nonperformance. This is upon the principle that he who prevents a thing may not avail himself of the nonperformance which he has occasioned. Nonperformance of a promise in accordance with its terms is excused if performance is prevented by the conduct of the adverse party.' "); *State v. Allen*, 21 Tenn. 258, 264 (1840)("The defendant has become bound to the State of Tennessee, for the appearance of Allen. The State of Tennessee, by her executive, takes possession of [Allen's] body and delivers him to a foreign power, where he has ever since been detained for crime committed against that power. The State of Tennessee takes judgment against the defendant, because Allen did not appear, (a thing that had been rendered impossible by the State itself,) and is seeking to make him pay the money. What monstrous injustice.").

■ Generally speaking, a trial court must afford a surety an opportunity to establish its suitability for relief pursuant to Tenn.Code Ann. § 40–11–204. *In re: Paul's Bonding Co.*, 62 S.W.3d at 193; *Indemnity Ins. Co. of North America*, 653 S.W.2d at 264. The surety carries the burden of proving that its petition for exoneration should be granted. *In re: Paul's Bonding Co.*, 62 S.W.3d at 193; *State v. Roger Martin/Liberty Bail Bond Co.*, No. 02C01–9710–CR–00402, 1998 WL 414713, at *2, 1998 Tenn.Crim.App. LEXIS 767, at *5 (Jackson, July 24, 1998). In this case, the appellant was not afforded a hearing, nor does the record establish the

appellant's asserted ground for relief, i.e., Hernandez's deportation to Mexico. Thus, unless we accept the State's position that the deportation of a defendant will never authorize a surety's exoneration pursuant to Tenn.Code Ann. § 40–11–204, we must remand this case to the trial court for a hearing.

Unlike the risk of a defendant's flight, the risk of deportation is not inherent in *every* bail bond agreement, nor is the risk of deportation the principal risk that a bail bond agreement seeks to address. Yet, the risk of deportation does inhere in those bail bond agreements involving aliens. Specifically, in entering into bail bond agreements involving aliens, sureties are necessarily cognizant of and assume the risk that, subsequently, the defendant will engage in conduct subjecting him to deportation proceedings. Accordingly, even if characterized as an act of the law obligatory in its effect upon Tennessee authorities, an order of deportation stemming from such conduct generally will not afford a surety relief. Moreover, even absent the surety's assumption of the risk, "there is 'a distinction between the act of the law proper and the act of the [defendant], which exposes him to the control and action of the law'" for purposes of relieving a surety of its obligation under a bail bond. *Taylor*, 83 U.S. (16 Wall.) at 370.

■ The surety does not assume the risk that the State will encourage the deportation of a defendant or otherwise refuse to cooperate in a defendant's or surety's efforts to stay deportation proceedings pending trial. *Cf., e.g., Galvez–Uriarte*, 709 F.2d at 1324–1325; *People v. Alvarez*, 94 Misc.2d 334, 404 N.Y.S.2d 509, 509–510 (N.Y.Sup.Ct.1978). Thus, to the extent the State's action or inaction effects a defendant's deportation and renders the surety's performance of its obligation under the bail bond impossible, a court may grant

relief pursuant to Tenn.Code Ann. § 40–11–204. *Cf. In re: Paul's Bonding Co.*, 62 S.W.3d at 196. That having been said, whether the State's action or inaction rendered the surety's performance of its obligation under the bail bond impossible may depend upon whether the surety engaged in reasonable efforts to monitor the defendant's movements and, in the event of loss of contact with the defendant, investigate his whereabouts. These efforts are significant because, if the surety would thereby have been aware of ongoing deportation proceedings, the surety will be required to demonstrate that in fact it pursued any reasonably available measures to stay deportation pending resolution of the criminal case in Tennessee. Likewise, the State's action or inaction may be immaterial in comparison to the defendant's acquiescence in deportation for purposes of avoiding criminal prosecution in Tennessee or the defendant's failure to seek attainable authorization or take advantage of existing authorization for his re-entry into the United States to answer the outstanding criminal indictment in Tennessee. *Cf. Argonaut Ins. Co.*, 134 Cal.Rptr. at 615; *State v. Poon*, 244 N.J.Super. 86, 581 A.2d 883, 892 (App.Div.1990).

■ Finally, while sureties executing bail bonds involving aliens necessarily assume the risk that the defendant subsequently will engage in conduct subjecting him to deportation proceedings, those sureties do not necessarily assume the risk that the defendant is subject to an order of deportation or deportation proceedings at the time of the execution of the bail bond. Rather, under the latter circumstances, a surety's claim for relief due to the defendant's subsequent deportation will depend upon whether, at the time of the execution of the bail bond, the surety expressly acknowledged the order of deportation or pending proceedings, possessed actual

knowledge of the order or proceedings, or otherwise should have known thereof through the exercise of reasonable care. *Cf. Castaneda,* 55 S.W.3d at 731–732; *People v. American Sur. Ins. Co.,* 77 Cal. App.4th 1063, 92 Cal.Rptr.2d 216, 219–220 (2000); *People v. Vukcevic,* 143 Misc.2d 894, 542 N.Y.S.2d 933, 933–934 (N.Y.Sup. Ct.1989).

### IV.

In short, whether the deportation of a defendant affords a surety relief under Tenn.Code Ann. § 40–11–204 depends upon the facts of each case. Accordingly, we remand this case to the trial court for a hearing on the appellant's petition for exoneration under Tenn.Code Ann. § 40–11–204.