IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 11, 2015 Session

## IN RE: AAAA BONDING COMPANY, LLC

**Direct Appeal from the Circuit Court for Rutherford County**
**No. (No number assigned)     Ben H. Cantrell, Senior Judge**

---

**No. M2014-02157-CCA-R3-CD – Filed May 5, 2016**

---

The appellant, AAAA Bonding Company, LLC, appeals the Rutherford County Circuit Court's revocation of its authority to write bail bonds. The State concedes that the trial court erred because the evidence failed to show that the owner of the company and his wife, the circuit court clerk, commingled funds and, therefore, that she received an indirect benefit from his ownership of the company to justify the revocation. However, the State requests that we remand the case to the trial court in order for the court to consider additional proof and make additional findings as to whether the court clerk is receiving some other direct or indirect benefit from her husband's ownership of AAAA Bonding Company, LLC. Based upon the oral arguments, the record, and the parties' briefs, we reverse the judgment of the trial court but decline to remand the case for further proceedings. Therefore, the judgment of the trial court is vacated.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Vacated.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Joel H. Mosley, Sr., James B. Mosley, and Joel H. Mosley, Jr., Murfreesboro, Tennessee, for the appellant, AAAA Bonding Company, LLC.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Jennings H. Jones, District Attorney General; and John Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

# I. Factual Background

On August 7, 2014, Melissa Harrell, the owner of AAAA Bonding Company, LLC, hereinafter "AAAA," was elected the Rutherford County Circuit Court Clerk. Prior to taking office on September 1, 2014, Ms. Harrell sold the company to her husband, Otho Dunaway. On August 19, 2014, AAAA filed a petition requesting approval of the change of ownership. On August 26, 2014, AAAA filed an amended petition contending that because Mr. Dunaway did not have the two years of experience needed to qualify as a full-time agent for a professional bonding company in Tennessee, he could not become the owner of AAAA and, therefore, had conveyed his interest in the company to Susan Kerr. According to the amended petition, Ms. Kerr had been a bonding agent for over fifteen years, would assume the operational responsibilities of the company, and would serve "as trustee" until Mr. Dunaway could become the company's approved owner.

At a hearing on the petition on August 27, 2014, the State advised the trial court that "at some point," the court was going to have to determine whether Mr. Dunaway's owning the company would have an indirect benefit on Ms. Harrell, thereby disqualifying AAAA from executing bail bonds. The court requested to hear from Mr. Dunaway, and he testified that he and Ms. Harrell married in November 2013 and that he paid her $20,000 for the company. He acknowledged that the price was based on his accountant's estimate of the company's fair market value. The appellant's counsel asked if Mr. Dunaway was currently an agent for AAAA, and he answered, "Yes, sir." He said that he and Ms. Harrell did not own any property jointly, that they did not have a joint bank account, and that he did not give her any money from his income to pay household expenses.

On cross-examination by the State, Mr. Dunaway testified that he worked for AAAA prior to the marriage. After the marriage, Mr. Dunaway and Ms. Harrell lived together in her home, and she paid all of the utilities. He said that he used all of his income from AAAA, which was about $700 per month after taxes, to pay child support, and that he did not go out to eat with Ms. Harrell because he did not have any money. Ms. Harrell's mother owned the building in which AAAA was located, and Mr. Dunaway did not know the amount of the monthly rent. He stated, though, that he would have to pay the rent when he took over the company. At the conclusion of the hearing, the trial court noted that the only issue before it was the petition to approve the transfer of ownership to Ms. Kerr and that the State was not opposing the transfer. Thus, the court granted the appellant's petition.

On September 3, 2014, the trial court signed an order approving the transfer. That same day, the State filed a motion to suspend AAAA's authority to write bail bonds, arguing that AAAA was disqualified pursuant to Tennessee Code Annotated section 40-

11-128, which provides that "[t]he following persons or classes shall not be bail bondsmen or agents of bail bondsmen or surety companies and shall not directly or indirectly receive any benefits from the execution of any bail bond: . . . clerks or deputy clerks[.] In the motion, the State argued that:

> AAAA Bonding Company . . . is operating as a company with all assets and income inuring to the direct benefit of the Circuit Court Clerk, in as much as Ms. Harrell's husband is the beneficiary of the Trust and contingent owner of said bail bond company. As such, the Clerk receives an indirect benefit from the operations of AAAA Bonding Company[.]

At a hearing on the motion on September 17, 2014, Ms. Kerr testified for the State that she and Otho Dunaway entered into an oral trust for her to take over AAAA and that she was responsible for "all the overseeing of the bonding company at the moment." She said that she and Robert Dunaway, Otho's cousin, were authorized to write bail bonds and that they were both agents for AAAA. Ms. Kerr had worked for the Harrell family for fifteen years, first for Buddy Harrell at Harrell Bonding Company and then for Melissa Harrell at AAAA. After Ms. Harrell took office as the circuit court clerk on September 1, 2014, AAAA continued to write bail bonds and collect money. Ms. Kerr said that the company's fee was always ten percent of the bond and that she deposited all fees into the company's bank account. The agent for the bond then received twenty-five percent of the premium collected, while Ms. Kerr received only a salary. Ms. Kerr paid herself and the agents from the company's bank account. She also paid the company's expenses, such as utility bills, phone bills, and final forfeitures, from the account. She said that she had never paid rent for the company's building and that she did not know who did so.

On cross-examination, Ms. Kerr testified that the ten percent fee was not always collected in full and that some defendants still owed money to AAAA. She acknowledged that if the trial court suspended the company's authority to write bail bonds, AAAA would no longer have any income to "chase forfeits" or notify defendants of their court dates. Ms. Kerr said that she currently was not obligated to pay Otho Dunaway anything and that she would not be obligated to pay him anything when the trust ended.

Otho Dunaway testified for the State that Ms. Kerr managed AAAA. The State asked if he was a bonding agent for the company, and he answered, "I guess I could be acting as agent. I don't actually write bonds." He said he stopped writing bonds two months before the hearing because he was "basically stepping out" of AAAA "[u]ntil the Court sees it's either official or I continue to do what I'm doing or we sell the company."

He said that he bought AAAA from Melissa Harrell for $20,000, that he paid her with a personal check, and that the funds came from money he brought into their marriage from the sale of a franchise he used to own. A certificate of deposit to secure the company's bonding capacity in the amount of $100,000.01 stayed with the business and was transferred from Ms. Harrell's name into Mr. Dunaway's name after the sale.

Mr. Dunaway testified that he and Ms. Harrell kept their finances separate and did not share living expenses. She owned the home in which they lived, and he did not pay her anything toward expenses, not even groceries. He said that he used to make $700 per month from AAAA but that "it went straight to child support." He said that he was "sort of salary at that time" and that he "didn't get the actual twenty-five percent" that agents normally received because "there were bills due and sometimes we had to use that money for bills." He said that he had bought Ms. Harrell gifts from his personal savings and that he did not buy her anything "from the contribution of this business." Sometimes he and Ms. Harrell went out to eat, but he paid for his own meals. They did not go on vacations, and each one paid for their own vehicle and gasoline. Mr. Dunaway said he currently had no source of income and paid his child support from his personal savings.

On cross-examination, Mr. Dunaway acknowledged that he set up the purchase of AAAA based on the advice of his accountant and that he set up the oral trust with Ms. Kerr based on the advice of counsel. He said he had not paid any money to Ms. Harrell since taking ownership of AAAA. Moreover, since Ms. Harrell had taken office on September 1, Mr. Dunaway had not received any benefit from the company and had not given Ms. Harrell any benefit from the company. On redirect examination, Mr. Dunaway testified that he worked for AAAA for about one year before he and Ms. Harrell married and that he received a salary "[i]f there was money there."

At the conclusion of the hearing, the trial court ruled as follows:

> Now, we've heard some proof and there is no proof that these parties [commingle] their funds. Nevertheless, Mr. Dunaway holds a valuable asset, and that is the beneficial interest in the bonding company. If the company prospers, he prospers. And so the Court finds that that is an indirect benefit to her just by virtue of the married relationship, and so the remedy in this case would be to revoke the license of AAAA Bonding Company to write bonds hereafter.

## II. Analysis

On appeal, AAAA contends that the State improperly sought suspension of the company's authority to write bail bonds pursuant to Tennessee Code Annotated section 40-11-128 because AAAA is not one of the "persons or classes" disqualified from being a bondsman under the statute. It also contends that, in any event, the trial court erred by finding an indirect benefit to Ms. Harrell from the marital relationship alone and that the State was required to show a commingling of funds by Mr. Dunaway and Ms. Harrell. The State concedes that the trial court erred because the commingling of funds, not the marriage relationship per se, is the correct approach for determining whether a spouse receives an indirect benefit, and that the proof failed to show a commingling of funds in this case. The State argues, however, that the commingling of funds is not the only evidence that can show a party received an indirect benefit and requests that we remand the case in order for additional proof and findings as to whether Ms. Harrell is receiving an indirect benefit from Mr. Dunaway's ownership of AAAA.

Tennessee Code Annotated section 40-11-125(a) lists the reasons for which a trial court may suspend a professional bondman's approval to make bail bonds. Relevant to this appeal, a court may suspend a professional bondman's approval if, after investigation, it appears that the bondsman has violated any of the laws of this state relating to bail bonds. Tenn. Code Ann. § 40-11-125(a)(1). Tennessee Code Annotated section 40-11-128 disqualifies certain persons from acting as bondsmen, stating,

> The following persons or classes shall not be bail bondsmen or agents of bail bondsmen or surety companies and shall not directly or indirectly receive any benefits from the execution of any bail bond: jailers, attorneys, police officers, convicted felons, committing magistrates, municipal or magistrate court judges, clerks or deputy clerks, sheriffs, deputy sheriffs and constables, and any person having the power to arrest or having anything to do with the control of federal, state, county or municipal prisoners.

Tennessee Code Annotated section 40-11-127 provides, "Upon motion, any district attorney general may prefer charges to have a bail bondsman stricken from the approved list pursuant to § 40-11-125 with the same provisions for notice, answer and hearing before the court, and the same right of appeal."

A "professional bondsman" is defined as:

> any person, firm, partnership or corporation, engaged for profit in the business of furnishing bail, making bonds or entering into undertakings, as surety, in criminal proceedings,

> or for the appearance of persons charged with any criminal offense or violation of law or ordinance punishable by fine, imprisonment or death, before any of the courts of this state, including municipal courts or securing the payment of fines, judgments or damages imposed and of costs assessed by those courts upon preliminary or final disposition thereof[.]

Tenn. Code Ann. § 40-11-301(4)(A). This court reviews a trial court's revocation of a bondsman's authority to act as a bonding agent under a de novo standard of review. Tenn. Code Ann. § 40-11-125(d); In re Cox, 389 S.W.3d 794, 798 (Tenn. Crim. App. 2012).

As to the appellant's claim that Tennessee Code Annotated section 40-11-128 does not provide statutory authority for the suspension of its ability to write bail bonds, we note that the appellant raised this issue in its response to the State's motion to suspend AAAA's privileges but that the trial court did not address it, instead focusing on whether Ms. Harrell received an indirect benefit from Mr. Dunaway's owning the company. A recent Tennessee Attorney General opinion concluded that Tennessee Code Annotated section 40-11-128 prohibited the spouse of a deputy sheriff from serving as a bail bondsperson if the two commingled funds. As the opinion explained:

> A bail bond is a contract, In re Sanford & Sons Bail Bonds, Inc., 96 S.W.3d 199, 202 (Tenn. Crim. App. 2002), and clearly a bail bondsperson's employment is directly affected when the bondsperson executes a bail bond. The bail bondsperson's spouse would have an indirect interest in any such contract if the spouses commingle funds and, therefore, would "indirectly receive any benefits from the execution" of that bail bond under Tenn. Code Ann. § 40-11-128. Because deputy sheriffs are specifically included in the prohibited "person or classes" listed in § 40-11-128, the statute would prohibit the spouse of a deputy sheriff from serving as a bail bondsperson if the spouses commingle funds.

Tenn. Op. Att'y Gen. No. 14-80 (Sept. 4, 2014). The opinion noted that "this Office has opined on several occasions that when spouses commingle assets, a person has at least an indirect interest in any contract directly affecting his or her spouse's employment." Id. (citing Tenn. Op. Att'y Gen. 08-102 (May 6, 2008); Tenn. Att'y Gen. Op. 05-017 (Feb. 3, 2005); Tenn. Op. Att'y Gen. 00-181 (Nov. 22, 2000); Tenn. Op. Att'y Gen. No. 88-122 (July 13, 1988)).

Attorney general opinions are not binding authority. State v. Black, 897 S.W.2d 680, 683 (Tenn. 1995). Nevertheless, they are entitled to considerable deference because government officials rely on them for guidance. Id. Moreover, "Attorney General opinions are particularly persuasive when they have been consistently repeated." H & R Block Eastern Tax Services, Inc. v. State, Dep't of Commerce and Ins., Div. of Ins., 267 S.W.3d 848, 861 (Tenn. Ct. App. 2008).

We are persuaded by the reasoning of the attorney general that Tennessee Code Annotated section 40-11-128 would prohibit the spouse of a court clerk from owning a bail bonding company or writing bail bonds for the company if that spouse and the court clerk commingle funds. Thus, we agree with the appellant and the State that the trial court erred by finding an indirect benefit to Ms. Harrell simply from the marital relationship. In addition, the evidence failed to show that Mr. Dunaway and Ms. Harrell commingled funds so that she received an indirect benefit from AAAA's writing of bail bonds. Thus, we conclude that the trial court erred by suspending AAAA's privileges to write bail bonds.

The State contends that a commingling of funds is not the only way to show that the prohibited person or class is receiving an indirect benefit from the spouse and that "an indirect benefit could arise if the couple jointly shared expenses or accumulated assets or shared other financial interests." The State requests that we remand the case to the trial court for further proof and findings as to whether Ms. Harrell is receiving an indirect benefit from Mr. Dunaway's ownership of AAAA.

At the August 27 and September 17 hearings, the State and counsel for the appellant questioned Mr. Dunaway about his and Ms. Harrell's finances, including their bank accounts, their payments for residential utilities, their payments for automobiles, and whether they went on vacation. The State has offered no explanation as to what additional proof would show that Ms. Harrell is receiving a direct or an indirect benefit from Mr. Dunaway's ownership of AAAA. Regardless, as noted by the appellant, Tennessee Rule of Civil Procedure 52.02 provides in part that "[u]pon motion of a party made not later than 30 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly."[1] More than thirty days has elapsed since entry of the trial court's order revoking AAAA's authority to write bail bonds. Furthermore, nothing in Rule 52.02 provides for additional proof. See Morgan v. Krauss, 2015 WL 5936918, No. M2014-02035-COA-R3-CV at *3 (Tenn. Ct. App. at Nashville, Oct. 12, 2015). Thus, we decline to remand this case to the trial court.

---

[1] The bail bond forfeiture process is a civil one governed by the Tennessee Rules of Civil Procedure. Indemnity Ins. Co. of North America v. Blackwell, 653 S.W.2d 262, 264-65 (Tenn. Ct. App. 1983).

## III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, the judgment of the trial court is reversed, and the judgment vacated.

_____
NORMA MCGEE OGLE, JUDGE