IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 21, 2025 Session

**IN RE: TENNESSEE BONDING COMPANY**

**Appeal from the Circuit Court for Hickman County[1]**
**No. 23-CV-47       Michael E. Spitzer, Judge**

_____

**No. M2024-00083-CCA-R3-CD**

_____

Tennessee Bonding Company ("Tennessee Bonding") claims that the trial court erred by temporarily suspending its bonding authority for thirty days and then restricting its bonding authority for a period of one year for violating local bail bonding rules that required a source hearing for bonds of One Hundred Thousand Dollars ($100,000) or more. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Cayley J. Turrin, Franklin, Tennessee, for the appellant, Tennessee Bonding Company.

Jonathan Skrmetti, Attorney General and Reporter; Joshua Daniel Minchin, Honors Fellow, Office of the Solicitor General; and Hans L. Schwendimann, District Attorney General; for the appellee, State of Tennessee.

**OPINION**

*Procedural History*

On December 20, 2023, District Attorney General Hans L. Schwendimann ("General Schwendimann") filed a petition, verified by affidavit, in the Hickman County

_____

[1] Documents relating to the bond proceedings were styled in accordance with the underlying criminal case, *State v. Jessica Thomason*, and In re: Tennessee Bonding Company was added. Notwithstanding the style of the case in the trial court, because Tennessee Bonding Company rather than Ms. Thomason is the appellant in these proceedings, we have styled this opinion "In re: Tennessee Bonding Company." *See In re: Sanford & Sons Bail Bonds, Inc.*, 96 S.W.3d 199, 206, n.1 (Tenn. Crim. App. 2002); *In re: AB Bonding Co., Inc.,* No. M2003-02813-CCA-R3-CD, 2004 WL 2853540, at *3 (Tenn. Crim. App. Dec. 10, 2004), *no perm. app. filed*.

Circuit Court requesting the immediate suspension of Tennessee Bonding "pursuant to Tennessee Code Annotated section 40-11-125 and Rule 5(1)(c)" of the Bail Bonding Rules for the Thirty-Second Judicial District ("Bail Bonding Rules"). In the petition, General Schwendimann claimed that on December 14, 2023, Tennessee Bonding, "through its registered bail agent, Richie Carroll [("Mr. Carroll")], executed a bail bond in the amount of Three Hundred and Ninety-Two Thousand Dollars ($392,000.00) to secure the future appearance" of Jessica Thomason ("Ms. Thomason"), in two separate cases pending presentment to the Hickman County Grand Jury. The petition claimed that Tennessee Bonding violated Bail Bonding Rule 12(2), which provides:

> No defendant with an aggregate bail amount of One Hundred Thousand Dollars ($100,000) or more shall be allowed to post a bond without notice to the District Attorney General and until a hearing is conducted in open court pursuant to T.C.A. § 39-11-715 regarding the source of the funds used to satisfy the bond premium. The District Attorney General may waive such a hearing upon notice to the court. Any bonding entity to write such a bond shall provide notice to the court and the District Attorney General, whereupon a hearing will be set by the court no later than the next regularly scheduled court date where the case is pending. Nothing in this section precludes the District Attorney General from requesting a source hearing on bail amounts under One Hundred Thousand Dollars ($100,000), which may be heard at the discretion of the court upon proper motion.

On December 21, 2023, the trial court entered an ex parte order temporarily suspending the bonding privileges of Tennessee Bonding and setting the matter for a hearing on January 2, 2024.

Shortly after the ex parte order was filed, Tennessee Bonding filed a response to the petition, claiming that Mr. Carroll "followed all applicable procedures in this matter." The response stated that Mr. Carroll "gave verbal notice" to Hickman County Circuit Court Clerk Dana Nicholson ("Ms. Nicholson") "that he was going to bond out" Ms. Thomason. He asked Ms. Nicholson to contact the District Attorney ("D.A.") to see if the D.A. "wanted a source hearing." According to the response to the petition, after contacting the D.A.'s office, Ms. Nicholson told Mr. Carroll that the D.A. said he thought that Ms. Thomason's bond had been revoked. Ms. Nicholson said that she had explained to the D.A. that Ms. Thomason's bond had been "tripled but not revoked." Ms. Nicholson said that she would check with the other clerks in the district to make sure Tennessee Bonding "had the requisite capacity available" to write a $392,000 bond. Mr. Carroll left the clerk's office and when he returned after lunch, Ms. Nicholson advised him that Tennessee Bonding had the capacity to write the bond but that she had not heard back from the D.A. Mr. Carroll wrote the bond around 1:15 p.m. The response claimed that Local Rule 12(2) "forces a

- 2 -

bonding agent to give legal advice and act as an attorney for the defendant by communicating with the district attorney on the defendant's case and then advise the defendant about such matters." The response averred that Rule 12(2) was inconsistent with Tennessee "statutory law."

### *January 2, 2024 Hearing*

At the outset of the hearing, the State introduced the following documents as exhibits: (1) a copy of the "Power of Attorney" from Universal Fire and Casualty appointing Mr. Carroll as the executing agent of a $392,000 bond for Ms. Thomason; (2) a copy of Ms. Thomason's $392,000 appearance bond with a handwritten check mark in the space before "Circuit Court"; and (3) a copy of the Bail Bonding Rules.

Following opening statements, the State called Mr. Carroll as a witness. Mr. Carroll testified that he had been an agent with Tennessee Bonding for four years. The following exchange occurred during the direct examination of Mr. Carroll by General Schwendimann:

Q. Okay. And are you familiar with the Court's local bail bonding rules?

A. Yes, sir. I keep them with me.

Q. Okay. And do you always endeavor to follow those rules?

A. Yes, sir, to the best of my ability.

Q. Were you made aware of any significant changes to bail bonding rules when the 32nd District came into existence in September as compared to what the rules were for the 21st district?[2]

A. Just the main one was like the -- on payment plans and different rules that apply to it.

Q. Okay. What about the requirement for source hearings on certain bonds? Were you familiar with that?

---

[2] In September 2018, Hickman, Lewis, and Perry counties were removed from the Twenty-First Judicial District to become the newly established Thirty-Second Judicial District. From the date the district was established, it has had a single circuit court judge. The Bail Bonding Rules for the Thirty-Second Judicial District became effective on September 1, 2022.

A. Yes, sir, but we done that before as well.

Q. Okay. So were you familiar then with Rule 12, which requires the bonding company to provide notice to the Court and to the district attorney's office when it desires to make a bond of $100,000 or more?

A. Well, the way we had always done it and been doing it was me go to the clerk's office and notify them and then they contacted the DA's office. That was the way we had been doing it all the way up until, I mean, present.

Q. Since September l[,] 2022, have you made any bonds of $100,000 or more in Hickman, Lewis, or Perry County?

A. I'd have to go back and look. I'm not sure. I know I've made several in these counties over the past four years.

Q. Okay. What about one on December 14th of this year?

A. Yes. That's the day I made the bond on [Ms. Thomason].

. . . .

Q. Okay. And how much was that bond amount?

A. It was [$]392,000.

Q. Okay. And during the course of that bonding procedure, did you provide any notice to anyone in the district attorney's office that you were wanting to make that bond and to check and see if a source hearing was desired by the [S]tate?

A. When I went into the clerk's office, she said she was notifying you guys and she would let me know and then had me sit on the bench. I waited for quite a while. No answer. So then we took lunch. I come back an hour and a half later and --

Q. But did you -- did you make the bond yourself?

A. Yes, sir.

Q. Are you the primary agent for Hickman, Lewis, and Perry County?

A. Yes, sir. I'm the only agent.

Q. Okay. But did you provide any notice as the -- as the bondsman for Tennessee Bonding Company to the district attorney's office?

A. No, sir. [Ms. Nicholson] said she was taking care of it.

Q. Okay. Have you read Rule 12 then[,] discussing the source hearing requirement? And are you familiar with the language of that? It says it's the bonding company's duty to provide the notice.

A. I guess I just was understanding that different. I thought, you know, when we went to the clerk's office and they notified you guys, that was us notifying as well. That's what I was under assumption of.

Q. Okay. Do you have phone numbers for the district attorney's office?

A. I mean, I have your number.

Q. You have my number?

A. Yes, sir.

Q. Okay. Have we communicated by phone in the past?

A. Yes, sir.

Mr. Carroll said that he executed the paperwork for the bond around 1:15 p.m. and that he received a text message about the source hearing requirement from the D.A.'s office around 2:30 p.m., while he was at an appointment for "surgery." Mr. Carroll said that a defendant is typically released right after the bonding agent writes the bond, but because Ms. Thomason "had a hold in another county," she was not released until around 4:30 p.m.

On cross-examination by counsel for Tennessee Bonding, Mr. Carroll agreed that he was not a licensed attorney. He said that giving legal advice would violate statutes governing bail bondsmen and that state law controls over local rules. He agreed that the source hearing notification requirement "essentially forces [him] to be in communication with this district attorney general's office in representation of Ms. Thomason in this case." He said that he "can't talk on behalf of the defendant ever to anyone." He agreed that writing a $100,000 bond was "pretty rare in this district," that he goes to the jail when he writes a bond that is less than $100,000, and that he goes to the clerk's office if the bond is

over $100,000. Mr. Carroll denied that he was "willfully subverting" Rule 12(2). He said that he thought he "was doing it right" when he "went to the clerk and then waited for quite a while until they let me go down and write the bond."

Counsel for Tennessee Bonding asked to call General Schwendimann as a witness because "he has brought up proof about text messages in his questions" to Mr. Carroll. The trial court found that "[i]t would not be relevant to what the court is going to do" and denied the request.

Following argument of counsel, the trial court found: (1) that the D.A.'s office was notified by the circuit court clerk that Tennessee Bonding sought to write a $392,000 bond for Ms. Thomason, and (2) that Tennessee Bonding "was not notified by the D.A.'s office that the source hearing was waived." The court stated that "Rule 12(2) is very explicit and says the bond of $100,000 or more is not allowed without notice to the district attorney -- [c]ourt finds it was given -- and until a hearing is conducted in open court -- which the [c]ourt finds was not completed and cannot find any waiver that was received by Tennessee Bonding." The court concluded that Tennessee Bonding "violated the local rules of bonding," extended the suspension for an additional thirty days, and restricted Tennessee Bonding's authority to make any bond over $100,000 for a period of twelve months unless the court entered an order approving such bond. The court entered an order to that effect on January 5, 2024.

Tennessee Bonding timely appealed.

### *Analysis*

Tennessee Bonding presents five issues for review, claiming that:

1. the Local Bonding Rules violate Tennessee Code Annotated section 40-11-126;

2. the D.A. of the Thirty-Second Judicial District should have "recused" himself and his office in the proceeding;

3. the trial court erred in allowing statements from the D.A. to be taken as proof;

4. the trial court erred in allowing the State to call bonding agent Mr. Carroll without notice to the Surety; and

5. the trial court erred in restricting Tennessee Bonding's authority to make any bond over $100,000, including bonds in cases initiated by arrest warrant and pending in General Sessions Court.

The State argues that there is no conflict between the Local Bonding Rules and Tennessee Code Annotated section 40-11-126, that Mr. Carroll testified that Tennessee Bonding failed to notify the D.A., and that the court properly restricted the bonding authority for twelve months. The State claims that recusal of the D.A. (Issue 2) and notice to the surety (Issue 4) are waived because Tennessee Bonding failed to "raise them below."

### *Standard of Review*

The issues raised by Tennessee Bonding present questions of law related to interpretation of statutes and local rules or mixed questions of law and fact, both of which we review de novo, with no presumption of correctness. *State v. Cole-Pugh*, 588 S.W.3d 254, 260 (Tenn. 2019); *In re Bonding*, 599 S.W.3d 17, 19 (Tenn. 2020); *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015).

### *Local Bail Bonding Rule 12(2) and State Law*

Tennessee Supreme Court Rule 18 requires "judges in each judicial district" to "adopt written uniform local rules of procedures" for administering cases. Tenn. Sup. Ct. R. 18. Judges in "[e]ach judicial district may also adopt other uniform rules not inconsistent with the statutory law, the Rules of the Supreme Court, the Rules of Appellate Procedure, the Rules of Civil Procedure, the Rules of Criminal Procedure, the Rules of Juvenile Procedure, and the Rules of Evidence." *Id*. The judge in the Thirty-Second Judicial District adopted written Bail Bonding Rules to regulate bail bonding entities.

Tennessee Bonding claims that because Rule 12(2) requires a bonding entity to give notice to the D.A., it forces the bonding entity to violate Tennessee Code Annotated section 40-11-126(5), which states:

In addition to the criminal sanctions elsewhere provided by law, the following is deemed unprofessional conduct and no bondsman or surety agent shall:

. . . .

5) Participate in the capacity of an attorney at a trial or hearing of one on whose bond the person is a surety[.]

The first sentence of Bail Bonding Rule 12(2) *prohibits a defendant* "with an aggregate bail amount of One Hundred Thousand Dollars ($100,000) or more" *from posting* "a bond without notice" to the D.A. and "until a hearing is conducted in open court[,]" pursuant to Tennessee Code Annotated section 39-11-715, regarding the source of the funds used to satisfy the bond premium.[3] The second sentence allows the D.A. to "waive such a hearing upon notice to the court." The third sentence allows "[a]ny bonding entity desiring to write" a bond in the aggregate bail amount of One Hundred Thousand Dollars ($100,000) or more to "provide notice to the court and the District Attorney General, whereupon a hearing will be set by the court no later than the next regularly scheduled court date where the case is pending." The fourth sentence provides a procedure by which a bonding entity desiring to write a bond in excess of $100,000 can notify the court and the D.A., thereby triggering the setting of the source hearing "no later than the next regularly scheduled court date where the case is pending." Expediting the date of the source hearing could result in both an earlier release of a defendant from jail, if the defendant can show that the source of the bond premium was not derived from criminal activity, and the defendant's being able to pay the premium to the bonding entity to write the bond. Nothing in Bail Bonding Rule 12(2) requires a bonding entity to contact the D.A. concerning waiver of the source hearing. Likewise, nothing in Rule 12(2) prohibits a bonding entity from contacting the D.A. to see if the D.A. would waive the source hearing. Even if the D.A. waives the source hearing, however, the D.A. must notify the court.

Notice to the court and the D.A. that a bonding entity desires to write a bond in the amount of $100,000 or more does not require the expertise of an attorney and can be done by a bonding agent with no more legal knowledge than is possessed by ordinary lay persons. *See State f/b/o City of Columbia v. 2013 Delinquent Taxpayers*, No. M2017-01439 COA-R3-CV, 2018 WL 2175510, at *5 (Tenn. Ct. App. May 11, 2018), *no perm. app. filed*. Rule 12(2) does not violate or conflict with Tennessee Code Annotated section 40-11-126(5). Tennessee Bonding is not entitled to relief on this issue.

### *Recusal of District Attorney*

Tennessee Bonding claims that the D.A.'s office should have recused itself from the bond hearing because General Schwendimann was "representing himself as a witness" and was also representing "the judicial district." The State argues that Tennessee Bonding waived this issue by failing to raise it below.

---

[3] Under Tennessee Code Annotated section 39-11-715, a trial court has "broad and comprehensive discretion" to ensure bail bond premiums are not paid from the proceeds of criminal activity. *State v. Cabellero-Grajeda*, No. M2004-02097-CCA-R3-CD, 2005 WL 1931402, at *4-5 (Tenn. Crim. App. Aug. 11, 2005) (quoting *State v. Shredeh*, 909 S.W.2d 833, 835 (Tenn. Crim. App. 1995)), *perm. app. denied* (Tenn. Dec. 19, 2005).

Counsel for Tennessee Bonding stated at the bond hearing that "[u]nless . . . General Schwendimann . . . recuses himself and has another district attorney handle this . . . we're going to have an issue with proof here." Tennessee Bonding's comment was not a request to have General Schwendimann disqualified, and no motion for recusal was made or filed. However, we will address the issue to see if there was "an issue with the proof" caused by General Schwendimann's involvement in the case as claimed by Tennessee Bonding.

In his opening statement, General Schwendimann stated that, "on December 14th shortly after noon, District Attorney Self was notified by the circuit court clerk, [Ms.] Nicholson, in Hickman County that—well, she had to ask a question if I wanted a source hearing on [Ms.] Thomason. There was a brief exchange with Ms. Nicholson inquiring about the status of Ms. Thomason's bond." Tennessee Bonding claims that this statement shows that General Schwendimann and the D.A.'s office "could not govern with impartiality as they have become a witness in this matter."

However, General Schwendimann's opening statement was a summary of what he anticipated the proof would be at the hearing and may have been based, in part, on the response to the petition filed by Tennessee Bonding. In its response, Tennessee Bonding claimed that "Mr. Carroll went to the Hickman County Circuit Court and spoke with [Ms.] Nicholson about this matter" and "gave verbal notice that he was going to bond out [Ms. Thomason]. Mr. Carroll wanted Ms. Nicholson to contact the D.A.'s office to inquire as to whether the D.A. wanted a source hearing." The response also claimed that "Ms. Nicholson informed [Mr. Carroll] that she would be reaching out" to the D.A. "to see if that was the case." According to the response, Ms. Nicholson "came back a little bit later and said that [General Schwendimann] had responded and thought that [Ms. Nicholson's] bond had been revoked and Ms. Nicholson in turn told him that it was tripled but not revoked." According to the response, "Mr. Carroll made the bond around 1:15 p.m." and received "the text [message] from the [D.A.] an hour after the bond was made."

At the hearing, counsel for Tennessee Bonding argued that "[t]he whole issue is whether General Schwendimann specifically got notice. Now, if General Schwendimann is going to be a witness, then he needs to be on the stand to be cross-examined. I should be allowed to subpoena his phone records. This is all about notice." Tennessee Bonding was mistaken. This case is not "all about notice." In fact, the trial court found that the D.A. had notice, albeit from Ms. Nicholson, that Tennessee Bonding desired to write Ms. Thomason's bond. This case is about compliance with Local Rule 12(2) and waiver. Mr. Carroll testified that he had been an agent with Tennessee Bonding for four years and was familiar with the Bail Bonding Rules, including Rule 12(2). Mr. Carroll knew that no one from the D.A.'s office had notified him that they would waive the source hearing. Mr. Carroll unilaterally decided to disregard the source hearing requirements of Rule 12(2) and write Ms. Thomason's bond.

The purpose of an opening statement is to inform the trial judge of the nature of the case and to outline, generally, the facts a party intends to prove. *State v. Sexton*, 368 S.W.3d 371, 415 (Tenn. 2012). That is exactly what General Schwendimann did in his opening statement. General Schwendimann did not testify; rather, he called Mr. Carroll as a witness at the hearing. Even if Tennessee Bonding had filed a motion for recusal of the D.A.'s office, there is absolutely nothing in this record that would have supported such a motion. This issue is without merit.

### *Notice to Surety*

Tennessee Bonding claims that the trial court erred by allowing the State to call Mr. Carroll without notice to Ms. Thomason. The State argues that Tennessee Bonding waived this issue by failing to raise it below. We agree. Waiver notwithstanding, we note that, if Tennessee Bonding had wanted Ms. Thomason to know about the hearing, it could have notified her. It is hard to imagine that counsel for Tennessee Bonding was surprised when General Schwendimann called Tennessee Bonding's sole bonding agent to testify.

Based on the record before us, Ms. Thomason had already posted bail, and she had been released from jail on the $392,000 bond written by Tennessee Bonding. Nothing in the record indicates that Ms. Thomason would be harmed if Mr. Carroll testified or even if Tennessee Bonding was sanctioned for violating Rule 12(2). Tennessee Bonding is not entitled to relief on this issue.

### *General Sessions Court*

Tennessee Bonding claims that the trial court erred by requiring Tennessee Bonding for a period of twelve months to obtain an order from the Circuit Court before writing bonds of $100,000 or more. Tennessee Bonding claims that this requirement includes bonds in "all cases initiated by arrest warrant and pending in General Sessions Court."

Under Bail Bonding Rule 12(2), bonding agents may notify the court and the D.A. to expedite the source hearing bond for bonds in the amount of $100,000 or more. Here, after the thirty-day suspension expires, Tennessee Bonding can still notify the court and the D.A. pursuant to Rule 12(2) to attempt to expedite the source hearing. The only difference under the court's January 5, 2024 order is that, for a period of twelve months, Tennessee Bonding must obtain an order before it can write bonds in the amount of $100,000 or more.

In its brief, Tennessee Bonding argues that, "[i]n this case, the Judge of Circuit Court has decided to take the General Sessions Court's jurisdiction over matters in their court in certain bonding circumstances out of their hands and into his own." We will not speculate about Tennessee Bonding's claim that the January 5, 2024 order applies to "all cases

initiated by arrest warrant and pending in General Sessions Court." However, the proof in the record was that Tennessee Bonding treated Ms. Thomason's case as a Circuit Court case. The Power of Attorney from the insurance company that Tennessee Bonding obtained showed the court as "Circuit." The $392,000 Appearance Bond, dated December 14, 2023, was signed by Mr. Carroll and Ms. Thomason and had a check mark handwritten in the space before Circuit Court. The space before General Sessions Court was blank. The Appearance Bond listed the following as the offenses for which Ms. Thomason was to answer: "drug paraphernalia, tampering with evidence, evading arrest, theft of property over [$1,000], and possession of meth[amphetamine] with intent." Court documents included in the technical record show that Ms. Thomason was bound over to the grand jury on multiple counts on November 27, 2023, and that her bond was doubled because she was a "community and safety risk."

After treating this case as a Circuit Case from the time Mr. Carroll attempted to get Ms. Nicholson to contact the D. A. to see if the D.A. would waive a source hearing, Tennessee Bonding cannot now somehow claim that the Circuit Court was usurping the General Sessions Court's jurisdiction in Ms. Thomason's case. *See State v. Dobbins*, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988) ("It is elementary that a party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason in this [c]ourt."). Tennessee Bonding is not entitled to relief on this issue.

### Conclusion

The judgment of the Circuit Court is affirmed.

s/*Robert L. Holloway, Jr.*

ROBERT L. HOLLOWAY, JR., JUDGE